Okay, I'd like the attorneys representing the parties to step up to the podium. I'd like for you to state your name, tell the court who you represent, and approximately how long your argument will take. Step up to the podium, please. Good morning, counsel. Good morning, your honors. I am Assistant Appellate Defender Rachel Moran. I represent Lawrence Dupree. I would anticipate using roughly 15 minutes, and I would like to reserve a few minutes for rebuttal, if possible. Very good. Thank you. Good morning, counsel. Good morning, your honor. My name is William Toffinetti. I'm an Assistant State's Attorney arguing for the people. I will be arguing the first issue only, and I expect to take no more than 10 minutes. Very good. Thank you. Good morning, your honor. Assistant State's Attorney Alan Stahlberg, and I'll be presenting the argument on the second issue in just a couple of minutes, I'm sure. Very good. Thank you. Okay, Ms. Moran, you want to proceed with your argument? Good morning, your honors, and may it please the court. Lawrence Dupree was a 17-year-old minor when he was arrested and charged with first-degree murder and attempted murder. He was represented at trial by an attorney who misunderstood a basic rule of evidence, and then received a sentence as severe as any adult in Illinois, the equivalent of life in prison. This court should reverse Lawrence's convictions and remand for a new trial because his attorney's incompetence turned an otherwise inadmissible prior consistent statement into the centerpiece of the state's case. Alternatively, this court should find Lawrence's 76-year sentence unconstitutional because it violates both the letter and the spirit of Miller v. Alabama. Turning to the trial issue first, it is well settled that the state cannot introduce a prior consistent statement of a testifying witness unless necessary to rebut a claim of recent fabrication. Even when such statements are admissible, they cannot be argued for their truth. Defense counsel did not know this. His ignorance of the law led him to commit three major errors. First, he opened the door to the prior consistent statement of who the state admits is the most damaging witness in the case, Donald Haywood. Second, he allowed the state to introduce the statement repeatedly through multiple witnesses, emphasize it, and argue it for its truth. And third, he never even requested a limiting instruction. The error first arose during the examination of Donald Haywood. At trial, Haywood testified that he was driving the car used in the murder and testified that Lawrence was the shooter. On cross-examination, defense counsel introduced an inconsistent statement from October 31, 2006. This was the first statement Donald Haywood gave, and in that statement, he denied being part of the crime and denied knowing Lawrence. If counsel had stopped there, the jury would have been left to decide between two very different statements given at very different times and to determine Haywood's credibility based on those two contradictory statements. Instead, counsel went much further and opened the door to the prior consistent statement of November 1, 2006. He did this specifically, and we lay out the questions in pages 8 and 9 of our brief. But he did this by suggesting falsely, and what he knew was falsely, that Haywood had recently fabricated this testimony in conjunction with a meeting with the state's attorneys in preparation for his case. Counsel? Is the questioning regarding meeting with the state's attorney, did that open the door? Your Honor, that was, yes, that was part of what opened the door. For that, he suggested that his memory had just come to him in the last week or so, his memory about this incident. He asked specific questions about whether Haywood had looked at pictures and then decided that Lawrence was the shooter. So it's a series of questions, part of which was that he was meeting with the state's attorneys. And as soon as those questions were asked, that's when the state's attorney argued that defense counsel had suggested that he was, quote, in cahoots with the state, Donald Haywood was, and that's what opened the door. So it was those series of questions that counsel had, frankly, no business asking, because he knew this was not a recently fabricated identification of Lawrence. Once he opened that door, the state barged right through it. They redirected Donald Haywood, elicited virtually the entire November 1 statement. They repeatedly asked him if that was the truth. Were you telling the truth on November 1? When you told the truth on November 1, you said Lawrence was the shooter. Then they elicited the statement again through the testimony of Detective Elcott, which was also improper, and the state doesn't even make an argument that that was permissible. It has effectively conceded that point. Then they argued in closing argument, you should believe Donald Haywood's trial testimony because it mirrors what he said on November 1. He's been saying the same thing for four years. That's blatantly improper. Your Honors, we cited myriad cases in the opening brief and in the reply brief finding reversible error on the admission of a prior consistent statement. And particularly, first of all, the state didn't bother responding to any of those cases, but particularly people versus Montgomery and people versus Miller are cases that say when the state, it's especially prejudicial and damaging when the state elicits this kind of statement through the testimony of a detective because it suggests to the jury that it lends more credibility to it because the police are now repeating the same statement. So that's particularly prejudicial. In people versus Smith, this court said that admission of a statement used to bolster the sagging credibility of a witness is reversible error when the witness's in-court testimony is crucial. And here the state has admitted the witness's, Donald Haywood's in-court testimony was the most crucial testimony in the case. If this was error, it was prejudicial. There were only two witnesses that identified Lawrence as the shooter. One of them is Quentin Latimer who recanted at trial. So he also was a man who this jury was forced to determine between multiple inconsistent statements. And the only other one was Haywood. And Haywood was the most crucial witness. And the state used his prior consistent statement over and over and over to do exactly what this court has condemned, to bolster the sagging credibility of Haywood. That was wildly improper and defense counsel had no idea how to stop it. Turning to the sentencing issue, Lawrence faced a mandatory minimum of 76 years in prison and he received that mandatory minimum. In Miller v. Alabama, which was decided one year after Lawrence was sentenced, the United States Supreme Court held that mandatory life sentences for children are per se unconstitutional. There is no functional difference between a life sentence and a 76-year sentence of which Lawrence will be required to serve at least 71.3 years before he is even eligible for release. To hold otherwise would create an absurd result where children who have killed at least two people automatically receive a new sentencing hearing because they automatically received natural life. But a child who has killed only one person does not receive a new sentencing hearing because he killed only one person and received a term of years that amounted to natural life. The state has not disputed any of these points. The state does not dispute that this is a de facto life sentence. And it cannot. Lawrence is not even eligible for release until he's 89 years old. The average life sentence for a person in the United States is 76 years and it's substantially lower for an African-American male in prison. So there really can be no question that he is destined to die in prison unless this Court recognizes that his sentence is unconstitutional. So your argument is this Court would be violating the holding in Miller if we affirm the defendant's conviction? Yes, Your Honor. It would be violating the holding of Miller and this U.S. Supreme Court's interpretation of the Eighth Amendment to affirm a sentence that amounts unquestionably to natural life in prison with no possibility of parole before dying. And what do you suggest? The sentence that the trial court imposed was mandatory. There was no discretion allowed for by the legislature in imposing this sentence. It had to be a term of years and the sentences had to be consecutive. What do you propose a trial judge would do in those circumstances on remand? Your Honor, a couple options. This is obviously a thorny issue, some of which is being litigated in the Illinois Supreme Court already. But what we suggested in our briefs is the remedy that the Illinois Supreme Court approved in People v. Leon Miller, which was factually distinguishable, of course. But what the Supreme Court did in Leon Miller is allow a trial court to impose a sentence that was vastly lower than the mandatory minimum. And the court in Leon Miller said, Illinois courts historically have had, quote, to grant leniency to a juvenile even if he is prosecuted as an adult. And that's what we would suggest. We would suggest a remand for a new sentencing hearing at which the trial court is required to consider the factors the U.S. Supreme Court laid out in Miller and is authorized to impose a sentence below the mandatory minimum. I would also note, Your Honor, that several of the statutes that require such an extreme sentence are being litigated right now in the Illinois Supreme Court in People v. Pacheco and People v. Terrell Jenkins. And those statutes are challenges to the constitutionality of the mandatory firearm enhancements, to the constitutionality of mandatory consecutive sentencing, and to the constitutionality of mandatory truth in sentencing requirements. So it's possible if this court remands that by the time it gets back to a sentencing hearing, some of those issues at least will have been decided. And certainly at a minimum, Lawrence should be able to present those issues in the trial court and to challenge the mandatory application of all those requirements which led to the mandatory 76-year sentence. The Miller factors are things like the court is required to consider things like age, the circumstances of the offense, the family upbringing, the circumstances of the child's rearing, his potential for rehabilitation. And all these factors are very relevant in this case. Lawrence was a 17-year-old young man who was, both of his parents were drug addicts. Both of them had extensive criminal histories themselves. He was removed from the home at a young age because of abuse in his home. He was raised separately from his siblings. And despite all of that, frankly, tragedy, at age 17 he had no juvenile history and no criminal history. This was his first offense. Even after he was unfortunately incarcerated, he managed to graduate as the valedictorian of the jail graduating class. This is a young man who does have a potential for rehabilitation even if this court affirms his convictions. And those are exactly the things that Miller said are very relevant to the determination of whether a child should be afforded the prospect for release before death. No Illinois court in a published opinion has yet addressed whether a de facto life sentence, a term of years that amounts to life, falls under Miller. This would be the first court, if this court chooses to address it, the first court to do so. However, a number of other state supreme courts and appellate courts have followed the reasoning of Miller and said that it unquestionably applies to a de facto life sentence. The California Supreme Court in People v. Caballero said that. The Massachusetts Supreme Court in Commonwealth v. Brown. The Iowa Supreme Court in both State v. Null and State v. Ragland addressed this issue. And notably, the Iowa Supreme Court should be considered particularly persuasive on this issue because the Illinois Supreme Court just a few months ago in People v. Davis quoted or addressed those cases at length, particularly State v. Ragland and State v. Null. And found those cases persuasive as to the reasoning of why Miller applies retroactively. So this court should do the same. And in those cases, in Ragland and Null, the Iowa Supreme Court addressed one was a minor who received a 60-year sentence, 16 years below what Lawrence got, and one was a minor who received a 52-year sentence, which obviously is even more significantly below that what Lawrence got. And the court said that Miller applies to sentences that are the That's a direct quote from State v. Ragland, which Lawrence cited in his reply brief. The court in Null said that the prospect of geriatric release is not the meaningful potential for rehabilitation that Miller had in mind. And here we don't even have a prospect of geriatric release. We have no prospect of release at all. The state has chosen not to address this issue, has not cited any cases to the contrary, has not made any argument or any reasoning as to why this de facto life sentence would not fall under Miller and would not require a reversal. So this court should remand for a new sentencing hearing. And for the remedy, it should direct the trial court to hold a Miller hearing in which the trial court is required to consider factors such as age, family background, upbringing, lack of criminal history, potential for rehabilitation, all the factors laid out in Miller, and the court has the The reality, Your Honors, is that Lawrence received not only constitutionally inadequate representation at trial, but a constitutionally infirm sentence after he was convicted. For those reasons, this court should reverse his conviction and avoid the sentencing issue entirely, or it should alternatively remand for a new sentencing hearing. Thank you, Your Honors. Thank you, Mr. Moran. Mr. Taufanidi. Yes, Your Honor. Please proceed with your argument. Thank you. Your Honor, everything that defense counsel complains about this morning in regards to the first issue flows from one thing, and that is the decision of trial counsel on how to conduct his trial and, most importantly, how to conduct his cross-examination. It is a touchstone of Strickland and his progeny that the decision that the trial counsel makes as to the strategic manner in which he conducts his trial, in particular how he conducts his cross-examination, is virtually unreviewable. He is the person in the court. It's his client who's been pointed out as being the killer, and it is his job to confront the witnesses against him and to try to raise reasonable doubt in his cross-examination. So how does introduction of the November 1st statement further that strategy? He has to decide whether or not he is going to conduct an aggressive cross-examination or to conduct a cross-examination that leaves some questions unasked, some arrows unfired. He decided to go for broke. He decided to ask every question he could think of that would cause the witness to be doubted by the jury. And one of the things he did was to demonstrate or to attempt to demonstrate to the jury that he was able to answer questions about the consistency of his testimony. Because he had met with the state's attorneys, he had looked at the photographs, he implied that the state had told him that some of his answers, his proposed testimony was not accurate. And by doing so, call into question whether or not the defendant was telling the truth in trial. But there are cases that say simply because you ask a witness, have you met with the state's attorney? Have you reviewed your testimony with the state's attorney? Have you gone over exhibits? That does not constitute an allegation of recent fabrication. There are cases that go the other way also. But in this particular instance, he had actually asked questions that implied that he was deliberately lying with the cooperation of the state. And the fact that he was giving testimony in court that was at variance with the October 31st statement, that in and of itself raises an inference of a reasonable reason fabrication. If all defense counsel had done was impeach Mr. Haywood with the October 31st statement and said nothing about has your enhanced memory come to you within the past few days, the state could not have introduced the November 1st statement. If he had relied upon merely the October 31st statement, he would have nonetheless put his client in the car and he would have been confronted with the in-court testimony of Haywood. The idea that the prior impeachment, that the October 31st statement would have been sufficient to raise reasonable doubt, I think is not demonstrated, particularly when you have the testimony of Quentin Latimer, who testifies to the same thing, that the defendant was in fact the shooter. So you don't have merely one witness who is confronted with two statements, his in-court testimony and his prior statement. Well, you've got Latimer who recanted on the stand and so the state was able to use his recorded statement as substantive evidence. Yes. And then you have the testimony of Darius Collins who says Dupree wasn't the shooter. I never saw Dupree that night. Well, it's up to the jury at that point to make the decision. And 115.10.1 evidence is every bit as valid. It's not a second-class type of evidence. Every bit is valid and it can support reasonable doubt. But the 115.10 only applies to Latimer because he recanted on the stand. When you get to Haywood, the state doesn't get to use the November 1st statement as the truth, as the state clearly argued to the jury it was, unless there is a charge of recent fabrication. Otherwise, the November 1st statement just comes in and there's a limiting instruction and you're only to consider it for a limited purpose. Well, it brings me back to my first point. All right? We are doing what we're not supposed to do. And that is second-guess trial counsel. You know, he's the guy in the courtroom. He's the guy who has to ask the questions and make his decisions on the fly. We have the luxury of thinking about things and looking up the case law and thinking about it in luxury in our offices. Counsel can't do that. He's trying a case right then and there. And he doesn't always know what's going to come up. And he thought at that point that it was the best proper use of his cross-examination to confront the witness with the fact that he had met with the state's attorneys, that he had looked at the photographs. Otherwise, how does he explain the fact that this witness is all of a sudden consistent with all of the other evidence? Now, in order for addressing the second prong of Strickland, in order for this type of error for counsel's manner at trial to result in reversible error, the decision has to be more than just wrong. Okay? It has to be more than just with unfortunate results. It has to be catastrophically wrong. And the cases that defendant cites in her brief point this out. It points to matters where the defendant himself introduced elements that the state had not introduced, where the defendant himself had made connections between the defendant and the crime or the contraband, stolen material, where the defendant himself had essentially changed sides. Okay? You don't have that here. You cannot say that because he had asked these questions on cross-examination, which is, after all, his prerogative. The manner in which he tries his case is his prerogative. You cannot say that that is why this defendant was convicted. It's just not that grand an error. The evidence that came in was cumulative. You had the testimony of Quentin Latimer, which the jury clearly accepted, and defendant, maybe not a perfect trial, maybe not perfect representation, surely, but it was a fair trial, and it was reasonable representation. It was representation that I think ensured, confronted the witnesses and ensured that the evidence was tested in the manner in which a trial is supposed to do. And I think we have a conviction that we can have faith in. There was no physical evidence linking this defendant to this crime? No. No fingerprints? No. No gun? No. Fingerprints on the shell casings? No. No indication that he was even there? Just two eyewitnesses. Nothing? Just two eyewitnesses. Two witnesses who changed their stories? Yes, but they told their testimony in court, and the jury believed them. And the jury knew that they had changed their stories. So the jury was in the position to determine their credibility. Well, the jury was told, what, 10, 12 times that Haywood's testimony was true, true, true, true, true? After being told by opposing counsel that it was lies, lies, lies. I mean, we have a right to rehabilitate our witness. We have a right to argue our case and the value of our evidence. As substantive evidence? We did not argue it as substantive evidence. We argued it as corroborative. Actually, I think the record reflects that the state's attorney who handled the case told the court, this comes in as substantive evidence. No, actually, he said just the opposite. He said we're not bringing this in as substantive evidence. I quoted that in my brief, Your Honor. When he asks Haywood on the stand, did you tell the truth on November 1st, and you came back to the police station because you wanted to tell the truth, how is that not using it as substantive evidence? Defendant, the, I'll be honest with you. I do not have an answer for that question. I think it's just a matter of assessing, you know, the total package of evidence and the evidence that convicted defendant. The evidence that came in via the prior statement was cumulative of the courtroom testimony of two witnesses, the 11510.1 estimate testimony and the in-court testimony of Mr. Haywood. And like I said, I think the defendant got a fair trial, a trial that we can have confidence in. Counsel, with no physical evidence to support the conviction, and with two witnesses who have given conflicting accounts as to what occurred, it's your position that this court should have confidence in that conviction? Yes. The jury heard it all, and the jury made its decision. I should also point out that defense counsel was of the opinion that both the October 31st statement and the November 1st statement were false statements, that, in fact, Haywood was attempting to put his client at a place where he never was. I suppose that the November 1st statement corroborated his trial testimony. Yes, it did. That did not help the defendant. Well, it wasn't designed to help the defendant. I mean, it opened the door for the State to use to help their case. It's his cross-examination to make. And, yes, it opened the door, and it was undoubtedly a calculated decision on his part. Whether it was correct, I don't know. But the idea that if he had left it out, we would have an acquitted defendant, I just don't think that's supportable, because the evidence that defense counsel did impeach him with was just too weak. The October 31st statement, it was just not enough. It put the defendant at the scene. And that alone would support, you know, the October 31st statement doesn't say he wasn't the shooter. It doesn't point to somebody else. It just says, I didn't see it. Actually, he said he didn't know Dupre. He didn't know anything. He was not involved at Lattimer Grove. Right. He didn't know anything. Right. He said he didn't see who the- So you've got I don't know anything in court. Oh, yeah, I know exactly what happened. And those two are exact opposites. But as to the crucial point of who is the shooter, he never named a shooter in the October 31st statement. And so he has defendant. And he's a friend of the defendant, so he was trying to protect him. Well, he wasn't protecting him very well when the very next day he walks into the cops' office. He's got to protect himself also. Thank you, Your Honor. Thank you very much, Mr. Koffman. Mr. Spielberg. Thank you, and good morning. First, I would just like to apologize. As counsel pointed out, our brief was not directly responsive to the issue, the second issue on the sentencing matter. As the supervisor of the Criminal Appeals Division, it is my responsibility, and I take full responsibility in this case, and I apologize for that. However, counsel is not correct when she says that our brief is fully non-responsive to the issue, because that is not true. As you can see from our brief, we do specifically address the cases, which counsel refers to, the Graham, Roper, Miller line of cases, and we specifically point out in our brief that Miller does not eliminate all mandatory minimums. You'll find it, I believe, on page 43 of our brief. And that is exactly the point that is at issue here. This defendant was found guilty of first-degree murder, of an intentional first-degree murder, by his own action, not by accountability, as well as an attempt first-degree murder, by his own action and not by accountability. He did both of those offenses by firing a firearm, causing approximate harm to the injury of the victims. By definition, the range in this case, then, based upon the mandatory minimums for the offenses, the mandatory minimums for the firearm enhancements, and the consecutive sentencing, started at 76 years. The minimum aggregate sentence the defendant here was facing was 76 years. But that was not... Does the State take the position that that's not a de facto life sentence? Your Honor, it's, from a de facto life standpoint, in reality, yes, it is de facto life. But as... So does it violate Miller? No, no, and what I was about to say, Your Honor, is that no court in the State of Illinois has held that there is a de facto life violation under the Eighth Amendment. In fact, the counsel relies heavily on the null decision from the Iowa Supreme Court. That decision, if you read it carefully, the aspect of the de facto life was based upon the Iowa Constitution, something which is not similar to our Constitution. The Illinois Supreme Court has not made a similar statement in any way regarding de facto life. The People v. Miller case, which counsel cites in her brief, which we also cite in our brief, was a rejection against mandatory natural life, eliminating all discretion from the judge, not saying there cannot be a lengthy term of years. Same with the People v. Davis case, which counsel referenced earlier. That court specifically upheld the availability of life sentences for juvenile murderers or lesser lengthy sentences. All... What the Illinois Supreme Court held in Davis was that all Miller held was a prohibition against the unique sentence of mandatory natural life. That's not what we have here. And that's why, Your Honor, from a de facto natural life standpoint, it's not an Eighth Amendment question. I'm not going to stay here and say that a 76-year sentence is not a lifetime sentence for this individual, but it doesn't mean that it violates the Eighth Amendment. Because, as we say in our brief, and as the courts have held, the Eighth Amendment doesn't prohibit the imposition of mandatory minimums. And as the Illinois Supreme Court has recognized, each offense is unique here. Each offense that the defendant committed intentionally, voluntarily, has its own mandatory minimum that must be adhered to. The trial court had no ability to avoid that. There is no way to say, well, I wish I didn't have to give you the mandatory minimum, but I'm going to give you less. That would be a void sentence. And so, yes, this is a lengthy sentence, but it's a lengthy sentence because it's the crime that the defendant committed. And for that reason, it has to be affirmed. It doesn't violate the Eighth Amendment as established by Miller v. Alabama, which talks about solely the mandatory natural life sentences. It doesn't violate Roper and Graham either, and it doesn't violate Peeple v. Miller or Peeple v. Davis. And for that reason, we'd ask this Court to affirm the sentence. Thank you very much, Mr. Spielberg. Ms. Moran. Thank you, Your Honors. May it please the Court. I'd like to make three points on rebuttal. The first two with respect to the prior consistent statement issue, and then just one brief point as to Mr. Spielberg's argument regarding the sentencing issue. As to the State's primary contention as to the prior consistent statement issue seems to be that it was a strategic one and that this is within counsel's purview. I'd like to point out why it's not even plausible to read that from the record. The first reason is that when the State attempted to introduce this statement after the redirective examination of Donald Haywood, the State then attempted to introduce it substantively by using the video statement. And counsel actually objected, and he said he didn't want this statement in evidence. And the only reason he didn't object during the redirect of Donald Haywood is that he thought the State could counter his own impeachment. And as I believe Justice Mason kind of pointed out during questioning, that's blatantly wrong, and the State's position on that is wrong as well. There is abundant case law indicating that the mere fact that someone used a statement to impeach, that does not open the door, that does not alone create an inference of recent fabrication. So counsel was wrong when he thought the State could use the November 1st statement simply to counter the October 31st statement. Counsel was also wrong when in Detective Elcott's testimony, he objected, but he objected to beyond the scope. That's another indication that he didn't understand the prior consistent statement rule. This wasn't strategic. He didn't want it in, but he didn't know how to object properly. And the third indication is actually during the jury instruction conference, counsel of course never thought to propose limiting instruction on prior consistent statement, but he also objected to pattern instruction 3.11, which is about inconsistent statements, because according to defense counsel, he thought all of the statements were in substantively. So it's clear he did not understand how the law works. He did not understand that this was not a substantively admissible statement. It couldn't possibly be strategic when he simply grossly misunderstood the rules of evidence. Also, the State argues as to prejudice. The State argued that it has to be a catastrophically wrong error. I think we're all aware that's not actually the standard. But what the State failed to do is provide any rebuttal to the cases cited in Lawrence's brief. In People v. Young, the State suggested that there are actually no cases finding ineffective assistance based on admission of a prior consistent statement. That's wrong. In People v. Young, this court held, and it's cited in our brief, counsel is ineffective for opening the door to a prior consistent statement. That's exactly what we have at issue here, and there is precedent for reversing on that ground. And in People v. Simpson, this division actually just two years ago found counsel ineffective for failing to object to an inadmissible statement. It wasn't a consistent statement, so it's a little bit different. But again, counsel was ineffective because he failed to object to an inadmissible statement and open the door for the jury to consider far more than it possibly could have. That was a massive error in this case. It was the focal point of the State's case, and it demands reversal for a new trial. As to the sentencing issue, the State just argued that no court in Illinois has held to the contrary, excuse me, has held that a de facto life sentence violates Miller. Well, no court has held otherwise. It's an issue of first impression. And so I think it would be a little bit absurd to find that simply because no court has addressed this issue, this court shouldn't hold that it violates Miller. The State has offered no reasoning whatsoever. It has just said, it just admitted that de facto life is the equivalent of natural life. In terms of how much Lawrence will have to serve, it has offered no reasoning for why this court should not find them functionally equivalent. And the State also said that this court should ignore State v. Null and State v. Ragland because they were based on the Iowa Constitution, which is different. That's actually not entirely accurate. State v. Null did ultimately reduce this or allow for a sentence, excuse me, reduce the sentence based on the Iowa Constitution. But in Ragland, this court, the Iowa Supreme Court based it purely on Miller and said, Miller applies to sentences that are the functional equivalent of life without parole. Illinois Supreme Court has found Ragland persuasive. Ragland was based on the Eighth Amendment and based on Miller principles and explicitly so held. And if this court chooses to address the sentencing issue, it should hold that way as well. Thank you. Any questions? Ms. Moran, Mr. Toffinetti, Mr. Spelberg, I'd like to compliment you on your arguments. This case will be taken under advisement and this court stands in recess.